# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| White Mountain Communities Hospital Incorporated, | ) ) ) | |
| Plaintiff, | ) ) | 3:13-cv-8194 JWS |
| vs. | ) ) | ORDER AND OPINION |
| Hartford Casualty Insurance Company, | ) ) ) | [Re: Motion at docket 58] |
| Defendant. | ) ) | |

## I. MOTION PRESENTED

At docket 58 plaintiff White Mountain Communities Hospital Incorporated ("White Mountain") moves to compel defendant Hartford Casualty Insurance Company ("Hartford") to supplement its January 30, 2014 response to White Mountain's discovery requests. The statement required by local civil rule 37.1 is at docket 59, and there is a supplement at docket 67. Hartford responds at docket 73, and White Mountain replies at docket 82. Oral argument would not assist the court.

## II. STANDARD F REVIEW

Rule 37(a)(3)(B) authorizes a party to move for an order compelling discovery. The scope of permissible discovery is broad. Rule 26(b)(1) provides that a party may

obtain discovery of any non-privileged information which is relevant to any claim or defense. The information sought need not be admissible at trial, but it must be reasonably calculated to lead to the discovery of admissible evidence.

## III.  BACKGROUND

White Mountain obtained a commercial property insurance policy underwritten by Hartford covering the period from April 1, 2011, thru April 1, 2012. The policy provided coverage for business income losses in addition to property damage. White Mountain's hospital was affected by the wildfire known as the Wallow Fire. That wildfire led to the temporary evacuation of many residents within the area served by White Mountain. White Mountain sought payment under the policy for property damage and business income losses. Hartford began its processing of White Mountain's claim in June of 2011. Hartford paid White Mountain $723,548 on the claims, of which $683,520 was paid on the business income claim. Payment was made on or before June 6, 2012, when Hartford issued its final claim correspondence.

White Mountain contends in this lawsuit that it is entitled to be paid substantially more money on the business income claim. Its expert has estimated the loss of business income to be between $2,760,756 and $3,214,978. White Mountain's claim is based in large part on the proposition that the Wallow Fire so devastated the area served by White Mountain that residents were slow to return to the area and that their prolonged absence led to a substantial, if temporary, diminution in the demand for White Mountain's services and an associated loss of income.

White Mountain filed suit against Hartford in state court on June 4, 2013.[1] Its complaint includes a claim for breach of the insurance contract, a claim of bad faith arising from the manner in which Hartford adjusted White Mountain's request for payment of insurance benefits, a claim that Hartford was unjustly enriched, and a claim for punitive damages based on Hartford's allegedly outrageous and malicious conduct in delaying payment and denying full payment to White Mountain.[2]

## IV.  DISCUSSION

White Mountain asks that Hartford be required to supplement some of its January 30, 2014 discovery responses to White Mountain's First Request for Production of Documents.  Specifically, it asks the court to order Hartford to respond further to Requests for Production Nos. 2, 5 , 6, and 8.  In its reply memorandum, White Mountain seeks an order compelling Hartford to further respond to Requests for Production Nos. 13, 14, and 17.  The court declines to consider that request, because the relief sought was first raised in a reply memorandum to which Hartford has not had an opportunity to respond.[3]

---

[1] The case was timely removed to this court based on diversity of citizenship.

[2] Doc. 1-1 at pp. 14-16.

[3] *Carepartners, LLC v. Lashway*, 2007 WL 321383 *3, n.6 (W.D. Wash. 2007) (taking same position).  While the supplemental Local Rule 37.1 statement did precede Hartford's response, there was no argument regarding Requests Nos. 13, 14 or 17 in the underlying motion.  In responding to the motion, Hartford did not address the supplemental statement.  There is nothing in Local Rule 37.1 which calls for a response to a statement itself.  Moreover, filing a supplemental statement is at odds with the text of the local rule, which ties the statement to the underlying motion.

**A. Request Nos. 2 and 5**

As pertinent to the pending motion, Request No. 2 asked for copies of claims manuals, training manuals, and claim handling guidelines.[4] Request No. 5 asked for all documents relating to "Hartford Insurance's Corporate Incentive Program."[5] As explained in White Mountain's motion papers, "Plaintiff requested disclosure of Hartford's claims standards and incentive program to understand how Hartford employees evaluate claims of this type and how the Hartford compensates its employees."[6] White Mountain contends that without these materials, it is not able to assess the reasonableness of Hartford's claims handling. Of course, this is a topic relevant to both the contract and bad faith claims pled in the complaint.

Hartford opposes production of these materials on several grounds. First, it argues that when White Mountain deposed Hartford claims adjuster Michael Kenny and Hartford's forensic accountant Mary Faucher, White Mountain's counsel asked no questions about the subject matter of Requests Nos. 2 and 5.[7] The tacit assumption is that failure to question the witnesses forecloses any further discovery, although Hartford cites no authority for that proposition. Mr. Kenny's deposition was taken on June 3,

---

[4]Doc. 59 at p. 2. The request sought additional materials, but they are not specifically addressed in White Mountains' briefing.

[5]*Id*. at pp. 3-4.

[6]Doc. 58 at p. 5.

[7]Doc. 73 at pp. 4-5.

2014.[8] Ms. Faucher's deposition was noticed for June 19, 2014,[9] and taken on that date.[10] By the time of the depositions, White Mountain had little information about the topics save what was provided by Hartford's initial response dated January 30, 2014, and its supplemental response dated March 28, 2014.[11]

Hartford's initial response to Request No. 2 stated that "Hartford does not utilize 'claims manuals,' training manuals,' or 'claim handling guidelines.' Hartford will produce relevant portions of its trade secret and proprietary Claims Excellence Standards upon entry of an acceptable Protective Order."[12] In its supplemental response Hartford stated that it was producing portions of the Claims Excellence Standards pursuant to the protective order.[13] Hartford's initial response to Request No. 5 consisted of a lengthy objection and a failure to produce any responsive documents.[14] This position was essentially repeated in its supplemental response.[15]

As the preceding shows, before the depositions were taken, Hartford had produced no material responsive to Requests Nos. 2 and 5, save selected extracts from its Claims Excellence Standards. Indeed, Hartford basically said the information sought

---

[8]Doc. 74.

[9]Docs. 33 and 73 at p. 4.

[10]Doc. 73 at p. 4.

[11]Doc. 73-1, at pp. 44 et seq.

[12]Doc. 59 at p. 3.

[13]*Id.*

[14]*Id.* at pp. 4-5.

[15]Doc. 73-1 at p. 48.

-5-

did not exist.  Under these circumstances Hartford's reliance on the lack of deposition questions by White Mountain's counsel about the materials sought in Requests Nos. 2 and 5 is unreasonable.

Hartford's second argument against production of additional documents is that, aside from additional portions of the Claims Excellence Standards, it has nothing to produce responsive to Requests Nos. 2 and 5.[16]  It also resists providing additional material from the Claims Excellence Standards on the grounds that the unproduced portions are not relevant.[17]

The proposition that Hartford has nothing which is the functional equivalent of claims manuals, training manuals or claims handling policies is implausible in the extreme.  It is inconceivable that a large insurance company which uses many claims adjustors could operate without standards for training the adjustors and without standards guiding the adjustors' work.  Perhaps Hartford uses terms other than manuals or policies, but it must have the kind of standards embraced within the concept of training manuals and claims handling manuals and policies.  Hartford's equivalent of training manuals, claims handling manuals, and claims handling polices may be contained somewhere in what it calls Claims Excellence Standards, or elsewhere.  The nomenclature is not controlling.  Moreover, White Mountain points to the testimony of Mary Faucher, Hartford's financial analyst which supports the proposition that Hartford

---

[16]Doc. 73 at p. 5.

[17]*Id.*

-6-

actually does have such standards.[18]  In the Declaration of May Faucher submitted by Hartford, Ms. Faucher avers that "I prepare and present guidelines and procedures to insurance adjusters for smaller business interruption claims."[19]  The declaration goes on to say that she also provides adjustors with outlines of documents they should obtain and that she prepares loss tracking reports.[20]

Hartford's remaining argument against providing a further response to Requests Nos. 2 and 5 is that the materials in its Claims Excellence Standards not already produced are both irrelevant and proprietary trade secrets.  Given the broad scope of discovery established by the Federal Rules of Civil Procedure, the argument that the materials are irrelevant fails.  The request for these materials is reasonably calculated to lead to the discovery of admissible evidence.  Neither is Hartford's assertion that the material include trade secrets a bar to disclosure to White Mountain.  As the Ninth Circuit has indicated, the fact that trade secrets are important does not support the inference "that a trade secret need never be disclosed.  A trade secret must . . . be disclosed where upon a proper showing it is made to appear that such disclosure is relevant and necessary . . . ."[21]  White Mountain has shown that how Hartford handles claims is critical to the success (or failure) of White Mountain's lawsuit.  In addition, it bears emphasis that the existence of a comprehensive protective order created by

---

[18] Doc. 58 at pp. 6-7.

[19] Doc. 73-1 at p. 54.

[20] *Id.*

[21] *Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 328 (9th Cir. 1961).

-7-

counsel and approved by the court[22], as well as White Mountain's recent representation that it will not disclose any of the documents it seeks to third parties,[23] provides adequate protection for Hartford's interest in keeping its claim handling practices shielded from competitors. Hartford will be ordered to supplement its responses to Request Nos. 2 and 5.

**B. Requests Nos. 6 and 8**

Request No. 6 essentially sought the personnel file for each adjustor who worked on adjusting White Mountain's claim. The persons known to be involved were listed as Eloisa E. Gutierrez, Aaron Byrum, Michael Kenny, and Mary Faucher.[24] Hartford objected and provided no documents.[25] Request No. 8 sought "all quality assurance audits since January 1, 2006," for Byrum, Kenny, and Faucher, plus any other Hartford employee who supervised them or made claims handling decisions on White Mountain's claim.[26] Hartford responded with objections and produced no documents.[27]

With respect to Request Nos. 6 and 8, "Hartford objected on the grounds that these requests are overbroad, the information sought is outside the proper scope of discovery and because the requests invade the employees' rights and expectation of

---

[22]Doc. 18.

[23]Doc. 82 at p. 5.

[24]Doc. 59 at pp. 5-6.

[25]*Id.* at p. 6.

[26]*Id.* at p.7.

[27]*Id.*

privacy and confidentiality."[28] The court agrees that Request No. 6 is overly broad. First, the request seeks information covering the period from 2006 through the present. That time period is excessive. White Mountain's claims were adjusted from June 2011 through June 2012. The court finds that a reasonable period of time is limited to years 2009 through 2013. Second, the request is overly broad in seeking information regarding Ms. Gutierrez, who had almost nothing to do with processing the claim, as well as unnamed persons whose involvement is speculative. The further response to the request will be limited to Mr. Byrum, Mr. Kenny, and Ms. Faucher.

The argument that the request is outside the proper scope of discovery is not persuasive. The contents of the personnel files of the three individuals may disclose information showing that the adjustors had reasons to "low-ball" their evaluations, were not actually competent to adjust the type of claim made by White Mountain, or did not process the claim in a reasonable manner. Any such information would be highly relevant to White Mountain's claims in this lawsuit (and contrary information would serve to defeat White Mountain's claims).

The argument that producing the requested information invades the employees expectations of privacy and confidentiality is only partly persuasive. Certainly, the employees have a reasonable expectation that no information will be disclosed which would identify family members, social security numbers, place of residence, phone numbers, private email addresses, anything relating to a medical condition, or similar essentially private matters  The material produced should be redacted by Hartford so

---

[28]Doc. 73 at p. 10.

that none of these matters are disclosed.  However, an expectation that assessments of work performance and any financial incentives to minimize payments on claims would be kept private is unreasonable.  Such an expectation would be inconsistent with Hartford's role as an insurer obligated to deal fairly and in good faith with its insureds, for such obligations are sometimes the subject of litigation between Hartford and its insureds.  What is produced will be subject to the protective order, so anything negative about an employee's work, anything relating to an employee's compensation, and anything else reflected in the material produced will not be disseminated to any third party.

Hartford also contends that White Mountain has not demonstrated a sufficient need for the information.  The court disagrees.  The performance of the adjustors and Ms. Faucher in handling White Mountain's claims is at the center of this lawsuit.  Improper claims handling or incentivized claims handling–**if** it were to be disclosed in the materials sought–would provide strong support for White Mountain's position in this lawsuit.  A further response to Request Nos. 6 and 8 will be required to the extent required by the discussion above.

## V.  CONCLUSION

For the reasons given above, the motion at docket 58 is GRANTED in part and DENIED in part as set forth above.  The additional responses required from Hartford shall be provided to White Mountain within 21 days from the date of this order.

Because the motion has been granted in part and denied in part, the court declines to apportion expenses relating to the motion between the parties.[29]

DATED this 8th day of December 2014.

                                                  /S/
                          JOHN W. SEDWICK
      SENIOR UNITED STATES DISTRICT JUDGE

---

[29] *See,* Fed. R. Civ. P. 37(a)(5)(C).