UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| White Mountain Communities Hospital Incorporated, ) | |
| Plaintiff, ) | 3:13-cv-8194 JWS |
| vs. ) | ORDER AND OPINION |
| Hartford Casualty Insurance Company, ) | [Re: Motion at Docket 117] |
| Defendant. ) | |

## I. MOTION PRESENTED

At docket 117 defendant Hartford Casualty Insurance Company ("Hartford") moved for leave to amend its answer and add a counterclaim. Plaintiff White Mountain Communities Hospital Incorporated ("White Mountain") responds at docket 125. Defendant Hartford replies at docket 128. Oral argument is requested but would not assist the court.

## II. BACKGROUND

Hartford issued a commercial property insurance policy to White Mountain covering the period from April 1, 2011 thru April 1, 2012. The policy provided insurance coverage against business income losses as well as property losses. White Mountain's hospital located near Springerville was affected by the Wallow Fire, which began burning on May 29, 2011, and which led to the temporary evacuation of Springerville

through June 13, 2011. White Mountain sought payment under the policy for property damage and business income losses. Hartford paid White Mountain $723,548 on the claims, consisting of a little over $40,000 on the property damage claim and $683,520 on the business interruption claim for losses up through at least August 2011. There is no dispute about the property damage claim, but White Mountain contends in this lawsuit that it is entitled to be paid more money on the business interruption claim.

The discovery deadline in the case was originally set for August 31, 2014. Before discovery closed, during the summer of 2014, Hartford sought to obtain through discovery a letter from White Mountain's lawyer to White Mountain's CEO Jerry Campeau and a third party, Bruce Hancock with Aegis Insurance Associates LLC ("Aegis"), who was White Mountain's insurance broker. White Mountain objected to Hartford's request for production based on the work product doctrine and attorney-client privilege. Hartford then sought to obtain a copy of the letter, as well as other documents related to White Mountain's claim, by subpoenaing Aegis's claim file. Aegis complied with the subpoena and turned over the requested documents in mid-August 2014, ahead of the discovery deadline. Emails in the file indicated that a property damage and restoration specialist, Matt Heileman, toured the hospital at Aegis's request and with White Mountain's knowledge and cooperation on June 24, 2011, shortly after the hospital reopened, and he found no evidence of smoke damage inside the building. The email indicated that Heileman met Randy Mattice at the hospital. Hartford asserts Mattice did not disclose such information when asked.

At the request of White Mountain, the discovery deadline was extended by a couple of months[1], and at the request of Hartford, the deadline for conducting depositions was extended until early November.[2] Hartford then deposed Heileman and confirmed what the emails had disclosed. Hartford asserts that the evidence

---

[1] Doc. 64; Doc. 107.

[2] Doc. 75; Doc. 107.

discovered shows that White Mountain did not actually sustain covered business losses past June 2011. Thus, the issue is not simply whether White Mountain is entitled to more business interruption benefits, but also whether it should have received any insurance payments for operations past June of 2011 in the first place. Hartford believes an amendment to its answer is warranted so that it may raise an affirmative defense of setoff and recoupment and add a counterclaim for beach of contract and breach of the duty of good faith and fair dealing. Before filing the motion to amend, Hartford sought White Mountain's stipulation to no avail. It then filed the motion on December 29, 2014.

### III.  STANDARD OF REVIEW

Given that the court has already entered a scheduling order setting a deadline for motions to amend and that deadline has past,[3] this request to amend is properly analyzed first under Rule 16 as a request to amend the scheduling order.[4] Under Rule 16, the schedule may be modified for good cause and with the judge's consent.[5] "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."[6]

If a party establishes good cause for the amendment, it must then demonstrate the amendment is proper under Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend pleadings]

---

[3] Doc. 10 at p. 7 (setting October 30, 2013, as the deadline for filing any motions to amend).

[4] *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607-08 (9th Cir.1992) ("Once the district court has filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standard controlled.").

[5] Fed. R. Civ. P. 16(b)(4).

[6] *Johnson,* 975 F.2d at 609.

when justice so requires."[7] The rule sets forth a very liberal amendment policy.[8] The decision to permit or deny a motion for leave to amend rests within the sound discretion of the trial court.[9] In deciding whether to grant leave to amend under Rule 15(a), courts generally consider the following factors: undue delay, bad faith by the moving party, prejudice to the opposing party, futility of amendment, and whether the party has previously amended his pleadings.[10] "Generally, this determination should be performed with all inferences in favor of granting the motion."[11] The party opposing amendment bears the burden of demonstrating a permissible reason for denying the motion to amend.[12]

## IV.  DISCUSSION

**A. Rule 16**

White Mountain argues that Hartford has not shown good cause to modify the scheduling order and file an amendment. As noted above, whether Hartford has good cause to seek a late amendment turns on whether it was diligent in discovering the basis for and seeking the amendment. Based on the sequence of events as detailed in Hartford's reply brief, the court concludes that Hartford has been sufficiently diligent and thus has good cause for seeking an amendment at this late stage. Hartford had no reason to anticipate the evidence that forms the basis of this requested amendment

---

[7] Fed. R. Civ. P. 15(a)(2).

[8] *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

[9] *See DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 185-86 (9th Cir.1987) (citing *United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981)).

[10] *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995).

[11] *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir.1999).

[12] *DCD Programs,* 833 F.2d at 187; *see Richardson v. United States,* 841 F.2d 993, 999 (9th Cir.1988) (stating that leave to amend should be freely given unless the opposing party makes "an affirmative showing of either prejudice or bad faith").

when the parties submitted their proposed scheduling order.  The only dispute at that time was whether White Mountain is entitled to more money on White Mountain's business interruption claim; there was no indication that White Mountain possibly received *more* than they were entitled to and thus no reason for Hartford to assert an affirmative defense and counterclaim.  Moreover, Hartford was unaware of the possible basis for the counterclaim until it received information that White Mountain and its own insurance broker already knew but failed to disclose.  Hartford asked White Mountain representative Randy Mattice if he had met with any third-party vendors at the facility after the fire and Mattice stated he did not recall any such meeting.  Upon seeking documents from Aegis for other reasons, well within the original discovery time frame, and receiving those documents from Aegis, it learned that Heileman had toured the hospital in June 2011, that he had met with Mattice at the hospital, that he did not find evidence of smoke or smoke damage, and that Mattice and Aegis knew about his conclusions.  Hartford then deposed Heileman to obtain information about his visit and his observations.  The motion for amendment was filed shortly after Hartford received the transcript from Heileman's deposition.  The time frame was reasonable.  Based on White Mountain's omission and Hartford's reasonable diligence, there is good cause for the amendment.

White Mountain asserts that Hartford should have been in contact with the insurance broker, Aegis, before the lawsuit was filed, and then it would have learned about Heileman's visit sooner.  White Mountain asserts that because Aegis is authorized to write policies for Hartford, Hartford should have known everything that was in Aegis's claim file.  That argument is unpersuasive.  As noted by Hartford, the fact that Hartford had to subpoena Aegis for the claim file and the fact that White Mountain objected to that subpoena and requested that it be able to review the file first undercuts White Mountain's argument that Hartford should have had unfettered access to the insurance broker's file.

**B. Rule 15**

Hartford has established good cause for amending the scheduling order, but it must also demonstrate the amendment is proper under Rule 15. White Mountain asserts that Hartford's motion for leave to amend has been unduly delayed. For the reasons noted above, Hartford has not unreasonably delayed requesting the amendment, nor has White Mountain demonstrated bad faith on Hartford's part in requesting the amendment.

White Mountain also argues that Hartford's proposed amendment would be futile because Hartford has conceded that White Mountain sustained property damage. As noted by Hartford, the fact that Hartford does not dispute White Mountain's entitlement to some property damage benefits—around $40,000—does not mean that White Mountain's entitlement to business interruption benefits from that damage is undisputed. Even prior to Hartford's request for an amendment, Hartford maintained that the property damage was minor and did not cause continuing, covered business income losses past August 2011. Now, based on the newly discovered evidence, Hartford also disputes whether there was enough property damage to warrant insurance payments past June 2011. In other words, Hartford concedes that White Mountain sustained some property damage, albeit minor, but disputes the alleged business interruption loses stemming from such damage. Thus, amendment is not futile simply because Hartford concedes there was some property damage.

White Mountain also alleges that amendment at this stage would be prejudicial because it has already deposed key witnesses and cannot now ask questions to develop a defense to the counterclaim. Amendment at this stage is certainly inconvenient for the parties and could require additional discovery and expense. However, the prejudice to White Mountain is minimal in light of the fact that it failed to disclose information about Heileman's visit. Moreover, the additional defense and counterclaim relate to the insurance contract that is already at issue in this lawsuit; therefore, while the proposed amendment expands the litigation, the defense and

counterclaim are still intimately related to the underlying lawsuit and should not involve much more discovery practice or significant expenses.

**C. Defenses and counterclaims**

White Mountain argues that Hartford cannot bring the counterclaim now because it is a compulsory counterclaim and should have been raised in the answer. However, a party may move to add a counterclaim and such a motion will be governed by Rule 15.[13] The court has already concluded that amendment is warranted under Rule 15. White Mountain also argues that Hartford waived any affirmative defenses it may have had. Again, this argument fails. "Waiver occurs when a party relinquishes a known right or exhibits conduct that clearly warrants an inference of an intentional relinquishment."[14] Hartford cannot have waived affirmative defenses about which it did not know. Indeed, the Ninth Circuit has liberalized the requirement that affirmative defenses be raised in the initial pleadings. Failure to assert such a defense in the answer does not necessarily waive it, as long as its inclusion does not prejudice the plaintiff's ability to properly litigate the defense.[15] Here, the trial date has not been set, and the court will allow the parties to confer about new deadlines so that White Mountain has an opportunity to prepare as needed. As noted above, the counterclaim involves the same insurance contract and any necessary facts needed to properly litigate the counterclaim should be easy to ascertain.

## V. CONCLUSION

Based on the preceding discussion, Hartford's motion for leave to amend its answer and add a counterclaim at docket 117 is GRANTED. Hartford is directed to file its amended answer within seven days of this order. White Mountain shall respond to

---

[13] Fed. R. Civ. P. 13 advisory committee notes 2009 amendments.

[14] *Humiston v. Nationwide Mut. Fire Ins. Co.*, 2006 WL 1794769, at *4 (D. Ariz. June 26, 2006).

[15] *Owens*, 244 F.3d at 713.

the counterclaim within seven days from the date it is filed and served. The parties are hereby directed to confer and file a joint notice within fourteen days of this order setting forth the parties' proposed deadlines for conducting any necessary discovery and filing any motions related to the newly added defense and counterclaim.

DATED this 23rd day of March 2015.

/s/JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE