1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9            **DISTRICT OF ARIZONA**

10

11  **White Mountain Communities**
    **Hospital Incorporated,**
12                                          )
               **Plaintiff,**              )        **3:13-cv-8194 JWS**
13                                          )
            **vs.**                        )        **ORDER AND OPINION**
14                                          )
    **Hartford Casualty Insurance Company,** )      **[Re: Motions at Dockets 78, 96]**
15                                          )
               **Defendant.**              )
16  _____)

17              **I.  MOTIONS PRESENTED**

18        At docket 78 defendant Hartford Casualty Insurance Company ("Hartford") filed a

19  motion for summary judgment.  At docket 96 Plaintiff White Mountain Communities

20  Hospital Incorporated ("White Mountain") filed an opposition and a cross motion for

21  summary judgment as to the issue of property damage.   Defendant Hartford filed its

22  reply and response at docket 116.  White Mountain filed its reply at docket 123.  Oral

23  argument was heard March 30, 2015.

24              **II. BACKGROUND**

25        Hartford issued a commercial property insurance policy to White Mountain

26  covering the period from April 1, 2011 thru April 1, 2012.  The policy provided insurance

27  coverage against business income losses as well as property losses.  White Mountain's

28  hospital located near Springerville was affected by the Wallow Fire, which began

    burning on May 29, 2011, and which led to the temporary evacuation of Springerville

through June 13, 2011.  White Mountain sought payment under the policy for business income losses and property damage.  Originally, Hartford processed the business income loss claim pursuant to the "Civil Authority" provision of the policy, which insures against business income loss in the event access to the property is prohibited by order of a civil authority.[1]  Hartford paid $433,520 based on the provision.  Later, in November, after a new adjuster was appointed to the file, Hartford decided that there could be coverage under the "Business Income Coverage" provision in the policy,[2] based on reported smoke damage, but it determined that a reasonable period for repairs would have been 60 days.  It then paid another $250,000 to White Mountain for business income lost during the additional 60 days.  In total, Hartford paid White Mountain $723,548 on the claims, consisting of a little over $40,000 for property damage claims and $683,520 for business interruption through August 6, 2011.  White Mountain contends that it is entitled to be paid more money on its business income loss claim and thus brings a breach-of-contract claim against Hartford.  It also brings an insurance bad faith claim and punitive damages claim against Hartford based upon Hartford's denial of additional payments and White Mountain's allegation of inadequate investigation and delayed payments.  White Mountain also raises an unjust enrichment claim against Hartford.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

[1]Doc. 79-1 at p. 50.

[2]Doc. 79-1 at p. 64.

[3]Fed. R. Civ. P. 56(a).

-2-

judgment."[4]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]  However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[7]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[8]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[9]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[10]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[11]

---

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5]*Id.*

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[7]*Id.* at 323.

[8]*Id.* at 323-25.

[9]*Anderson,* 477 U.S. at 248-49.

[10]*Id.* at 255.

[11]*Id.* at 248-49.

1

## IV. DISCUSSION

2  **A. Breach of Contract**

3          White Mountain alleges Hartford breached the insurance contract when it denied

4  White Mountain's claim for business income losses incurred after August 6, 2011.

5  White Mountain argues that the contract provides coverage for reduced revenue

6  caused by the fire and that Hartford failed to fully compensate it as required. The basis

7  for White Mountain's breach-of-contract claim and its opposition to Hartford's motion for

8  summary judgment is its belief that losses stemming from the fire are covered as long

9  as there has been some property damage; that is, it believes Hartford should pay them

10  for business losses through at least part of 2012 because the facility suffered some

11  property damage due to the fire and those damages were not fully repaired until 2012.

12  White Mountain's argument is off base.  The Business Income Coverage provision does

13  not cover all income losses caused by the fire; rather, it covers only those income

14  losses resulting from actual physical damage to the facility caused by fire.  The policy

15  states as follows:

16

17          We will pay up to the Special Business Income Limit of Insurance . . . for
        the actual loss of Business Income you sustain and the actual, necessary
18          and reasonable Extra Expense you incur due to the necessary interruption
        of your business operations during the Period of Restoration due to direct
19          physical loss of or *direct physical damage caused by or resulting from a
        Covered Cause of Loss to property* . . .[12]

20  Hartford correctly stresses that only income lost because of business interruption

21  caused by physical damage to the property is covered.  Business income lost because

22  of the fire in general is not covered.

23          White Mountain clearly had some physical property damage.  It is undisputed

24  that White Mountain staff had to clean some soot and that ultimately White Mountain

25  discovered damage to air conditioners and carpet and that there were some

26  microscopic smoke toxins found in air filters that had already been removed from the

27  _____

28          [12]Doc 79-1 at p. 64.

-4-

1    facility.[13]  Plaintiff asserts there are disputed facts about the extent of smoke

2    contamination, but the dispute over the existence or extent of the smoke contamination

3    inside the facility, if any, is immaterial. Plaintiff fails to point to any evidence that it lost

4    business income due to smoke contamination or any physical damage to the facility.

5    That is, there is nothing to show that the AC repairs, cleaning, carpet replacement, or

6    smoke inside the building, as opposed to the economic conditions in the area from the

7    fire, caused a cessation or slowdown of business.  There is no evidence that any part of

8    the facility was physically dysfunctional during repairs or that it lost patients because of

9    the damage or repair work.  To the contrary, the record shows that despite the repairs

10   and cleaning that had to be done, White Mountain did not have to turn away patients

11   after the facility's reopening.[14]  Indeed, White Mountain's CEO could not name any

12   services that the hospital was unable to provide because of property damage, except

13   for perhaps its sleep studies services, which the evidence shows was back in service by

14   the end of June.[15]  The industrial hygienist's report indicated that there was no threat to

15   human safety after testing for microscopic particles.[16]  Plaintiff presents no evidence

16   from which a jury could find that physical damage or smoke contamination kept people

17   away from White Mountain's facility.

18          Moreover, the record actually shows that White Mountain was given the benefit

19   of the doubt and was paid for any income lost because of physical damage through

20   August 6, 2011, even if there was no direct proof that the physical damage itself, as

21   opposed to the fire in the area generally, caused a business slow down.  The evidence

22

---

23          [13]See doc. 99-1 at pp. 165-66 noting that the air filters, which had already been removed
24   and replaced, had some smoke toxin residue, but noting that there were minimal toxins found in
     the facility's HVAC system and patient areas and concluding that there was no threat to human
25   safety.

26          [14]Doc. 80-1 at pp. 58-62.

27          [15]Doc. 80-1 at pp. 60-61; Doc. 80-1 at p. 132.

28          [16]Doc. 99-1 at p. 166.

on the record demonstrates that White Mountain was evacuated for a short period of time, from June 3, 2011 through June 14, 2011.  Hartford covered any income lost during this period pursuant to the Civil Authority provision in the insurance contract. The Arizona Department of Health conducted a full inspection of the facility and allowed it to reopen after some basic cleaning.  White Mountain's CEO stated in his deposition that the staff cleaned as required within several days, except for one wing of the hospital where it took staff members about a month before they had time to clean up any residue.[17]  Even if the smoke residue itself caused a slowdown or cessation in business, which again has not been demonstrated, the record demonstrates that at most it took a month to clean the visible residue.  As noted above, Hartford ended up agreeing to apply the Business Income Coverage provision in the policy and cover any business income losses through August 6, 2011, based on White Mountain's report of necessary cleaning and repairs.  Thus, White Mountain would have been compensated for any income losses that happened to be caused by that physical damage.  White Mountain does not explain or provide supporting evidence to demonstrate how any other later discovered physical damage interrupted White Mountain's business operations.

Plaintiff cites the affidavit of White Mountain's CEO wherein he generally states that a wing of the hospital was unusable because of smoke damage, but he provides no supporting factual details to explain why it was closed or when or for how long.[18]  Such a conclusory affidavit, lacking details and unsupported by factual data, is insufficient to create a genuine issue of fact.[19]  During the CEO's earlier deposition, he mentioned an inoperable wing of the facility that was cleaned about a month after the fire.[20]  Assuming

---

[17]Doc. 80-1 at pp. 59-60.

[18]Doc. 98-1 at p. 96.

[19]*Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

[20]Doc. 80-1 at p. 60.

1  that this is the same wing discussed in the affidavit and assuming the closure of this

2  wing actually caused income loss, White Mountain would still not be entitled to more

3  money from Hartford based on this damage since it received payment for any income

4  lost during the month needed to clean this part of the facility.  Despite the CEO's bare

5  assertion that "there is no doubt whatsoever that the business was interrupted due to

6  the smoke that engulfed the property and caused damages," there is no *evidence* that

7  the actual damage to the property slowed operations.  That is, there is no evidence

8  from which a jury could infer that White Mountain is entitled to more money under the

9  Business Income Coverage provision in addition to what it already received.[21]

10  Plaintiff also asserts that the hospital never functioned normally after the fire and

11  that its reputation in the community had been damaged due to its disrepair.  While that

12  very well may be, there is no supporting proof in the record from which a jury could

13  conclude this was caused by physical property damages.

14  While not clearly stated in the complaint, White Mountain argues in its response

15  brief that Hartford also breached the insurance contract by not properly calculating the

16  business losses that it did pay.  Hartford, in its reply, provides a thorough and

17  persuasive explanation of how the policy provides for two methods of calculating

18  business income loss and how it complied with one of those methods by determining

19  White Mountain's net expected income and subtracting from that income any non-

20  continuing expenses (expenses the insured saved by not operating at full capacity).[22]

21  White Mountain did not provide any competing evidence to demonstrate that Hartford's

22  method was incorrect, nor did it set forth what the correct calculation for determining

23

24  _____

25  [21]Doc. 98-1 at p. 97.  Plaintiff also cites to its expert report to state that physical damage
from the smoke caused a slowdown of business, but upon close examination of the report, it

26  does not state that the physical damage itself caused a slowdown of business but rather that
the loss of business income was caused by the fire generally.  Again, that is not sufficient to

27  trigger coverage.

28  [22]Doc. 112 at pp. 10-11.

-7-

1   what White Mountain's business income losses should have been.[23]   White Mountain

2   asserts that the amount of non-continuing expenses Hartford subtracted is disputed, but

3   it does not point to any evidence to show what the correct amount should have been

4   and why.[24]   White Mountain also asserts that Hartford did not properly account for its

5   employees' paid time off benefits.   Again, Hartford's reply clearly and persuasively

6   explains and demonstrates that when it calculated White Mountain's business income

7   loss it assumed all payroll expenses continued unabated and did not deduct any payroll

8   saving as non-continuing expenses.[25]   Thus, there is no evidence creating a dispute

9   about Hartford's calculation.

10          White Mountain also argues that it is entitled to more benefits under the

11   insurance policy's extended income and future earning endorsements.   Under the

12   extended income provision, when an insured experiences a "necessary suspension of

13   . . . operations" that results in business income loss payable under the policy, Hartford

14   will pay for an extended period of business income loss.   As with the Business Income

15   Coverage provision, this extension in coverage only applies to business income loss

16   that results from physical property damage.[26]   The future earnings coverage is also

17   linked to business income loss attributable to the physical damage.[27]   As stated above,

18   there is no evidence in the record to show that the income loss was due to physical

19   property damage itself, as opposed to the unfavorable business conditions in the area

20   as a result of the fire.

---

[23]Doc. 116-1 at pp. 7-8.

[24]Doc. 96 at p. 20.

[25]Doc. 116 at pp. 11-12.

[26]Doc. 79-1 at pp. 51-52.

[27]Doc. 79-1 at p. 52.

**B. Bad Faith and Punitive Damages**

Hartford also seeks summary judgment as to White Mountain's claims for insurance bad faith and punitive damages based on Hartford's handling of the insurance claim.  Under Arizona law, "the tort of bad faith arises when the insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'"[28] An insurer may be liable for bad faith even if it has not breached the insurance contract itself.[29] An insured alleging bad faith must show that the insurer acted unreasonably and either knew or recklessly disregarded the fact that its conduct was unreasonable.[30] "The first prong of the test for bad faith is an objective test based on reasonableness. The second prong is a subjective test, requiring the plaintiff to show that the defendant insurance company committed consciously unreasonable conduct."[31]  An insurer may be liable for bad faith if it denied a claim that was not fairly debatable or if it acted unreasonably in processing a claim, regardless of that claim's merits.[32]  In either case, the objective and subjective elements of bad faith are applied.  That is to say, an insurer "may commit bad faith not only by intentionally and unreasonably denying a claim, but also by intentionally processing, evaluating, or paying a claim in an unreasonable manner."[33]

White Mountain alleges Hartford committed bad faith both in its denial of additional coverage and in its handling of the insurance claim.  As discussed above, Hartford denied White Mountain's request for payments for business income losses

---

[28]*Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000) (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)).

[29]*Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265,1270 (Ariz. 1992).

[30]*Milhone v. Allstate Ins. Co.*, 289 F. Supp. 2d 1089, 1094 (D. Ariz. 2003).

[31]*Id.*

[32]*Zilisch*, 995 P.2d at 280.

[33]*James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008).

1   after August 6, 2011, based on the fact that White Mountain's business was not

2   interrupted due to physical damage.  There is nothing in the record to demonstrate that

3   this conclusion was objectively unreasonable; White Mountain fails to point to evidence

4   to show that its business slowdown was a result of the physical damage to air

5   conditioners, some air filters or vents, and carpet, or a result of smoke residue.  Thus,

6   White Mountain's claim for additional business income loss coverage was fairly

7   debatable.   Even if additional coverage was not fairly debatable, there is no bad faith

8   on the part of an insurer based on denial of coverage if it believed the claim to be fairly

9   debatable.  This subjective inquiry is usually a question for the jury; however, a court

10  may rule on the issue as a matter of law "[i]f the plaintiff offers no significantly probative

11  evidence that calls into question the defendant's belief in fair debatability."[34]  Again,

12  there is no evidence to show that the physical damage was the reason for White

13  Mountain's claim for additional business income losses, and there is no evidence to

14  suggest Hartford's denial was a pretext to avoid payments.

15      White Mountain also argues that Hartford inadequately handled its insurance

16  claim.  White Mountain stresses the delay in payment and Hartford's failure to send

17  someone to the facility to investigate the damage.  The record shows that Hartford paid

18  White Mountain for business income loss related to the evacuation within a month of

19  receiving the profit and loss statements, which the parties do not dispute is a

20  reasonable request for an insurance company to make when processing a business

21  income loss claim.[35]  It is also within the time allotted under the contract.[36]  White

22  Mountain also states that it did not receive payment for the property damage until

23  November 30, 2011, which it asserts was an unreasonable six-month delay.  However,

24

25      [34]*Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1116 (D. Ariz. 2003).

26      [35]Doc. 99 at 43; Doc. 80-1 at p. 90.

27      [36]Doc. 79-1 at p. 43 (stating that payment will be made within 30 days after Hartford
    receives proof of the loss if the parties have agreed about the amount of loss or an appraisal
28  award has been made).

-10-

White Mountain provides no evidence of the date on which White Mountain requested payment for any specific claim for physical damage nor the date on which it sent a proper proof of loss as required by the insurance contract. All the record shows is that White Mountain did not report physical damages right away and that Hartford was not aware that White Mountain was claiming property damage until July.[37] Clearly, the parties were still assessing the extent of any smoke damage in August and September.[38] There is simply no evidence which demonstrates an unreasonable delay in payment.

As for Hartford's investigation, White Mountain argues that Hartford acted in bad faith when it failed to send someone out to examine the property and failed to arrange and provide the labor for duct cleaning and air quality testing. White Mountain did not mention its concern of continuing smoke contamination until late July, and Hartford contacted a vendor to investigate.[39] The vendor indicated that there was no smoke in the building,[40] but recommended duct cleaning and air testing. That work was not completed until February of 2012. White Mountain asserts without support that it was Hartford's responsibility to follow up on the vendor's recommendation and to facilitate getting testing and cleaning completed rather than just pay the bill for such services. It then asserts that the delay in facilitating the recommended cleaning and testing amounts to unreasonable conduct. However, even if it were Hartford's responsibility to obtain estimates and arrange for the labor, there is no evidence that further investigation would have revealed relevant facts that would have led to more benefits

---

[37]Doc. 98-1 at p. 149; Doc. 116-1 at p. 60.

[38]Doc. 98-1 at p. 175.

[39]Doc. 98-1 at p. 175.

[40]Doc. 98-1 at p. 175.

being paid.[41]  Indeed, the subsequent analysis in February indicated no problem with the air quality and recommended only that old air filters, which had already been removed, be disposed of properly because of minor amounts of toxins found in those old filters.[42]

The claim file shows that Hartford continually worked to assess White Mountain's claim.  The claim file notes show that it was willing to reconsider White Mountain's claims as needed and reassess based on any new information.[43]  The notes also show that there were numerous communications between the parties from June 2011 through the spring of 2012.  Plaintiff does not have evidence to demonstrate an indifference to facts on the part of Hartford; rather, the claim file shows that Hartford's decisions were not groundless or based on inadequate consideration.  Moreover, nothing in the record demonstrates there was some nondisclosure, violation of industry custom, reneging on promises, or obfuscation on Hartford's part.[44]

At most, the record shows that Hartford may have been negligent given that there appears to have been some mis-communication or misunderstanding about coverage and about who was responsible for facilitating or arranging repairs, but that alone is not tantamount to bad faith.[45]  White Mountain suggests that Hartford's removal

---

[41]*Aetna Cas. and Surety Co. v. Superior Court*, 778 P.2d 1333, 1336 (Ariz. Ct. App. 1989).

[42]Doc. 98-1 at pp. 192-93.

[43]Doc. 80-1 at pp. 2-49.

[44]*See Bowman v. Country Preferred Ins. Co.*, No. CV-12-02720, 2015 WL 1470086, at *4 (D. Ariz. Mar. 31, 2015) (stating that in addition to groundless denials or inadequately investigated reasons for denials, other common examples of bad faith include such things as deceit, nondisclosure, reneging on promises, or obfuscation).

[45]*Miel v. State Farm Mut. Auto. Ins. Co.*, 912 P.2d 1333, 1339 (Ariz. Ct. App. 1995) ("Mere mistake and inadvertence are not sufficient to establish a claim for bad faith."); *see also Rawlings v. Apodaca*, 726 P.2d 565, 573 (Ariz. 1986) ("As long as [the insurer] acts honestly, on adequate information and does not place paramount importance on its own interests, it should not be held liable because of a good faith mistake in performance or judgment.").

of the original adjuster from the claim file shows that he had been handling the claim unreasonably. However, the only evidence related to the change of adjusters shows that a new adjuster was assigned after the prior one had been terminated for reasons unrelated to White Mountain's claim.[46] Thus, there is no evidence on the record to support an inference that Hartford was consciously unreasonable. Likewise, there is no evidence of an improper motive or "evil mind" to support punitive damages.[47]

**C. Unjust Enrichment**

Hartford requests summary judgment on White Mountain's unjust enrichment claim. Under Arizona law, an unjust enrichment claim is an equitable action that only applies where a party has no other remedy at law.[48] Here, there can be no unjust enrichment claim where the policy governs the relationship and provides a remedy.[49] White Mountain does not provide an argument in opposition.

## V. CONCLUSION

Based on the preceding discussion, Hartford's motion for summary judgment at docket 78 is **GRANTED**, and White Mountain's motion for summary judgment at docket 96 is **DENIED**.

DATED this 17th day of April 2015.


/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[46]Doc. 99 at p. 84.

[47]*Rawlings*, 726 P.2d at 577-78.

[48]*City of Sierra Vista v. Cochise Enters., Inc.*, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984);

[49]*Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (noting that if there is a "specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."); *Trustmark Ins. Co. v. Bank One Ariz., NA*, 48 P.3d 485, 491 n.5 (Ariz. Ct. App. 2002).

-13-