UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| White Mountain Communities Hospital Incorporated, ) | |
| Plaintiff, ) | 3:13-cv-8194 JWS |
| vs. ) | ORDER AND OPINION |
| Hartford Casualty Insurance Company, ) | [Re: Motions at Docs. 166, 167] |
| Defendant. ) | |

## I.  MOTIONS PRESENTED

At docket 166, Plaintiff/Counter-defendant White Mountain Communities Hospital Incorporated ("White Mountain") filed a motion to compel depositions of three Hartford Casualty Insurance Company ("Hartford") employees.  Defendant/Counter-claimant Hartford responded at docket 173.  White Mountain's reply is at docket 179.  Hartford requested oral argument, but an argument would not be of additional assistance to the court.

At docket 167 Hartford filed a motion to compel three depositions and discovery responses.  White Mountain responds at docket 175.  Hartford replies at docket 177.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Hartford issued a commercial property insurance policy to White Mountain covering the period from April 1, 2011 thru April 1, 2012.  The policy provided insurance coverage against business income losses as well as property losses.  White Mountain's hospital located near Springerville was affected by the Wallow Fire, which began burning on May 29, 2011, and which led to the temporary evacuation of Springerville through June 13, 2011.  White Mountain sought payment under the policy for business income losses and property damage.  Originally, Hartford processed the business income loss claim pursuant to the "Civil Authority" provision of the policy, which insures against business income loss in the event access to the property is prohibited by order of a civil authority.[1]  Hartford paid $433,520 based on the provision.  Later, in November, after a new adjuster was appointed to the file, Hartford decided that there could be coverage under the "Business Income Coverage" provision in the policy[2] based on reported smoke damage, but it determined that a reasonable period for repairs would have been 60 days.  It then paid another $250,000 to White Mountain for business income lost during the additional 60 days.  In total, Hartford paid White Mountain $723,548 on the claims, consisting of a little over $40,000 for property damage claims and $683,520 for business interruption through August 6, 2011.

White Mountain filed suit, alleging it is entitled to be paid more money on its business income loss claim.  It brought a breach of contract claim, an insurance bad faith claim, and a punitive damages claim against Hartford based upon Hartford's denial of additional payments and upon allegations of inadequate investigation and delayed payments.  The court granted summary judgment in favor of Hartford on all of White Mountain's claims, and it allowed Hartford to file a counterclaim for breach of contract and bad faith and to seek recoupment based on information discovered during the

---

[1]Doc. 79-1 at p. 50.

[2]Doc. 79-1 at p. 64.

litigation process. The remaining issue in the case, therefore, is whether Hartford overpaid White Mountain business interruption losses based on its alleged misrepresentations regarding damage to the hospital. The primary basis for Hartford's counterclaim is based on the allegation that White Mountain led Hartford's adjuster to believe that the hospital was only partially operational because of smoke damage.[3]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) provides for liberal discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[4] However, the requested discovery must also be proportionate to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[5] Relevance for purposes of discovery is defined broadly; "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[6]

The court must limit the requested discovery if it is shown to be "unreasonably cumulative or duplicative;" if "the party seeking the discovery has had ample opportunity to obtain the information;" or if the requested discovery is not proportional to the needs

---

[3] Doc. 139 at pp. 9-11.

[4] Fed. R. Civ. P. 26(b)(1).

[5] Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) was recently amended to "restore the proportionality factors to their original place in defining the scope of discovery." The considerations that bear on proportionality have been moved from Rule 26(b)(2)(C)(iii). The amendment "does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations." *See* Fed. R. Civ. P 26(b) advisory committee's note to 2015 amendment.

[6] Fed. R. Civ. P. 26(b)(1).

of the case as discussed above.[7]  Additionally, the court may, with good cause, limit discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[8]

### III. DISCUSSION

**A.     Hartford's motion to compel**

Hartford seeks to depose three individuals associated with White Mountain.  The first is Suzanna Bueno.  Bueno was White Mountain's director of accounting at the time White Mountain submitted its insurance claim.  White Mountain objects to Hartford's deposition request on the basis that Bueno has no relevant information.  It argues that she only handled the financial aspects of White Mountain's claim and has no knowledge about the alleged misrepresentations made to Hartford.  The record cited supports Hartford's request.  White Mountain disclosed Bueno as a witness and anticipated that she would testify "regarding her conversations with Hartford and review and preparation of the updated claims."[9]  Thus, White Mountain acknowledges that she communicated with Hartford representatives about the insurance claim.  Also, Jerry Campeau, White Mountain's CEO during the claim process, testified that she may have told Hartford that White Mountain was in danger of shutting down.[10]  She was also present during a November 2011 meeting where Hartford alleges White Mountain made specific misrepresentations.  The court finds that she could have personal knowledge regarding the allegations in Hartford's counterclaim, and therefore, Hartford's request to depose her is warranted.

Hartford also seeks to depose Rick Jackson.  Jackson was White Mountain's certified public accountant at the time of the insurance claim.  Again, the record cited by

---

[7] Fed. R. Civ. P. 26(b)(2)(C).

[8] Fed. R. Civ. P. 26(c)(1).

[9] Doc. 167-1 at p. 47.

[10] Doc. 167-1 at pp. 30-32.

Hartford demonstrates that Jackson was involved in the efforts to negotiate with Hartford about White Mountain's insurance claim. It also appears that he may have been at the November 2011 meeting, which is the primary basis for Hartford's counterclaim.[11] Therefore, the court concludes that Hartford's request to depose Jackson is warranted, as it could reasonably lead to the discovery of relevant information.

Lastly, Hartford requests to depose Greg Was, who is White Mountain's current CEO. The court finds this to be a closer call. Was was not White Mountain's CEO at the time of the insurance claim, and therefore, he has no personal knowledge about representations that may have been made to Hartford employees about smoke damage or the functioning of the hospital. That said, he has been the CEO during the course of the lawsuit; he was the CEO in August of 2014 when Hartford discovered that a property damage specialist had toured the hospital shortly after the fire and found no odor or smoke damage. Thus, he was CEO during the time that such information was allegedly withheld from Hartford. Given that Hartford's counterclaim alleges that White Mountain concealed material information during claim processing and during litigation, the court concludes that Was may have relevant information regarding the counterclaim. Also, he verified White Mountain's discovery responses to interrogatories and requests for production and admissions.

Hartford also argues that White Mountain failed to answer Hartford's second set of interrogatories and requests for production after Hartford agreed to two extensions of time in which White Mountain could respond. A few days after the second extended deadline passed and after an attempted meet and confer, Hartford filed its motion to compel. It argues in the motion that White Mountain, in failing to timely respond, waived its opportunity to object to Hartford's requests and asks that the court direct White Mountain to respond to its requests without objection. On the same day Hartford filed

---

[11] Doc. 167-1 at p. 147.

the motion to compel, White Mountain submitted its responses with objections and without production of any documents.  The failure to provide specific, timely objections to discovery results in a waiver.[12]  White Mountain is directed to file another response to Hartford's second set of interrogatories and requests for production without objections.  It is also directed to examine its records and make the inquiries necessary to determine whether there are any documents responsive to Hartford's request.

White Mountain's response to Hartford's motion to compel presents arguments that challenge the validity of Hartford's counterclaim on the merits.  However, the motion to compel only addresses whether the requested depositions are relevant for purposes of discovery, which it is.  The merits of the counterclaim are not properly decided here.

**B.    White Mountain's Motion to Compel**

White Mountain seeks to depose three Hartford employees.  The first is Paul Marriott, a director for Hartford who works in Hartford, Connecticut.  Marriott is the supervisor of national general adjuster Walter Taylor.  Taylor, in turn, directly supervised Mike Kenney, the Hartford adjuster assigned to White Mountain's insurance claim.  White Mountain has not met its burden of showing that Marriott could reasonably have relevant information regarding Hartford's counterclaim; that is, there is nothing to suggest he has knowledge about the representations made by White Mountain personnel or what specifically prompted Kenney to provide more money to White Mountain in late 2011.  White Mountain cites to an email Marriott wrote to counsel in January of 2012 to demonstrate that Marriott was the "ultimate decision maker" on the claim, but that email involves a dispute about how lost wages apply to business interruption calculations.  The issue in Hartford's counterclaim is whether it overpaid White Mountain based on misrepresentations and omissions regarding the operability of the hospital and not based on miscalculations related to net income.  The record cited shows that Taylor would be the appropriate supervisor to depose, and Hartford

---

[12]*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

indicates in its response that it has offered White Mountain the opportunity to redepose Taylor, if necessary.

The second Hartford employee White Mountain seeks to depose is Peter Gallagher. Gallagher is a forensic accountant with Hartford and is located in Hartford Connecticut. He supervised Mary Faucher, who was the primary accountant on the insurance claim. To demonstrate Gallagher's relevance to the counterclaim, White Mountain cites an email that shows Gallagher was included in a conference call in December of 2011 to discuss White Mountain's business income losses. As noted above, the counterclaim involves the issue of whether White Mountain led Hartford to believe that it was owed more business loss compensation as a result of smoke damage. The calculations and accounting aspects of the insurance claim are not in dispute for purposes of Hartford's counterclaim. The court concludes that at most Gallagher was only tangentially involved in the accounting aspect of the claim and, thus, would not be reasonably likely to have relevant information here.

Finally, White Mountain would like to depose Steve Palazzolo. Palazzolo, like Taylor, is a national general adjuster for Hartford who supervises other general adjusters. He filled in for Taylor as Kenney's supervisor for roughly one month around the time Hartford alleges White Mountain employees made misrepresentations about the hospital's status. In support for its deposition request, White Mountain cites an email authored by Palazzolo in November of 2011 discussing the claim and the potential property damage to the hospital.[13] The email demonstrates that Palazzolo could have relevant information regarding the counterclaim and that his deposition would be appropriate.

---

[13] Doc. 179-6 at p. 114.

### V.  CONCLUSION

Based on the preceding discussion, Hartford's motion to compel at docket 167 is GRANTED.  White Mountain's additional response to Hartford's second set of interrogatories shall be provided within 28 days from the date this order is filed. No attorney's fees are warranted given that White Mountain's opposition to the deposition of Greg Was was substantially justified.[14]  White Mountain's motion to compel at docket 166 is GRANTED as to Steve Palazzolo but otherwise DENIED.  No attorney's fees are warranted.

DATED 9th day of December 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[14]Fed. R. Civ. P. 37(a)(5)(A)(ii).